IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SARAH CRAIG,            }
                        }
    Plaintiff,          }
                        }
                        }   CIVIL ACTION NO.
v.                      }
                        }   98-AR-1619-S
JAMES JONES, ET AL.,    }
                        }
    Defendants.         }
                        }

FILED
99 MAY 17 PM 3:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAY 17 1999

## MEMORANDUM OPINION

Presently before the court is a motion for summary judgment filed by defendants, Officer Georgiana Smith ("Officer Smith")[1] and Sheriff James Jones ("Sheriff Jones"). Defendants seek judgment as a matter of law on all claims asserted against them by plaintiff, Sara Craig ("Craig"). Defendants have also filed a motion to strike certain evidence filed in opposition to summary judgment. For the reasons hereinafter stated, defendants' motion for summary judgment is due to be denied in part and granted in part. The motion to strike is due to be granted.

## Background

On the afternoon of March 24, 1997, Sara Craig was riding in a car with Denise Wooten ("Wooten").[2] Wooten became involved in an

---

[1] Georgiana Smith is misidentified in the complaint as Georgia Brown. The parties recognize the error and refer to only Georgiana Smith throughout the briefs and evidence.

[2] Wooten is also known as Alice Latham.

1

altercation in a grocery store parking lot.[3] She returned to her vehicle and drove away with Craig in the passenger seat. Wooten and Craig were soon stopped by Deputy Dennis Blackerby ("Deputy Blackerby"), who had been dispatched to address the altercation in the parking lot. Wooten failed several field sobriety tests and was arrested for driving under the influence of alcohol. Craig then exited Wooten's vehicle, and, according to Deputy Blackerby, rolled down the embankment on the edge of the road. Craig disputes that she fell down the embankment. Craig admitted to Deputy Blackerby that she had consumed two or three drinks and was eventually handcuffed and arrested for public intoxication.[4] Deputy Blackerby escorted both women to the Shelby County Jail.

Craig arrived at the jail upset and crying, with her hands cuffed behind her back. Craig's request to make a phone call was denied. Officer Smith attempted to commence booking procedures while Craig continued to cry. Officer Smith contends that Craig became hysterical, and the booking procedure had to be aborted. Craig has no recollection of Officer Smith beginning the booking procedure and denies that she became hysterical. Craig was instructed to take off her own clothes and don a prison uniform. After changing into the prison uniform, Craig was re-handcuffed. The parties dispute whether she was handcuffed with her hands in front of her body or behind her back.

Craig was then placed in a "detox" cell. The cell was small, had a concrete bunk, a sink and toilet. Craig was placed in the cell alone.

---

[3] There is no indication that Craig was also involved in this altercation, which involved a minor fender bender and an assault and battery.

[4] Craig eventually plead guilty to this charge.

2

There seems to be some discrepancy in the accounts of various witnesses as to whether Craig was still handcuffed at the time she was placed in the detox cell,[5] but the parties agree that at some point, Craig was handcuffed in the cell. After depositing Craig in the detox cell, Officer Smith left to process other incoming arrestees. Officer Smith returned to check on Craig several times during Craig's stay in the detox cell. The parties differ widely in their accounts of what events occurred upon Officer Smith's return trips to the cell.

According to Officer Smith, she received a report that Craig was banging her head against the cell door. Accompanied by Officer Steven Ballenger ("Officer Ballenger"), Officer Smith checked on Craig and contends that she observed Craig banging her hand on the door. Officer Smith again denied Craig's request to make a phone call and ordered Craig to be quiet. At some point,[6] Officer Smith and Officer Ballenger brought a restraining chair into the detox cell and put leg shackles and handcuffs (Officer Smith maintains Craig was not wearing cuffs before this time) on Craig, cuffing her from behind. Officer Smith then left Craig restrained in the chair. About one hour later, Officer Smith returned to check on Craig after receiving a report of another problem in the detox cell. According to Officer Smith, Craig had somehow freed her hands from the chair and was on the ground near the chair, with her

---

[5] Officer Steven Ballenger states that Craig was cuffed with her hands behind her back when placed into the detox cell, Craig maintains that she was cuffed in front, and Officer Smith's deposition testimony indicates that Craig was not cuffed at all.

[6] It is unclear from the deposition excerpts provided whether Craig was put in the restraining chair during Officer Smith's first check on her or during or a subsequent visit.

3

legs still attached to it. With the assistance of Officer Ballenger and Officer James Dove ("Officer Dove"), Officer Smith eventually put a "short chain" on Craig. A short chain attaches a prisoner's handcuffs to his or her leg shackles to further restrict movement. Officer Smith placed Craig, on her stomach and in this "drawn" position, on a mattress on top of the concrete bunk. Officer Smith returned at some point to find that Craig had fallen off the bunk and was laying on the floor. Officer Smith then put the mattress on the floor and placed Craig, still "short chained" on the mattress. Approximately one and a half to two hours later, another Officer checked on Craig, who was by then quiet enough to have the chains removed. Officer Ballenger's description of events is essentially consistent with the account provided by Officer Smith.

Craig, on the other hand, tells a very different version of the events occurring while she was in detox. Craig denies that she banged her head or her hand on the door at any time. Rather, Craig maintains that she continued to cry while in the detox cell (this is arguably inconsistent with her denial of having cried earlier), and that she continued to request access to a phone. Craig claims that the first time Officer Smith returned to check on her, Officer Smith struck her in the face with an open fist and told her to "shut up." Either during the first or a subsequent visit, Craig asserts that Officer Smith kicked her several times in the back, leg, shoulder, arms and head. Craig states that she was on the floor, handcuffed with her hands in front of her while she was being kicked. Craig contends that at some point leg shackles were applied and "short chained" to the handcuffs she had been

4

wearing. According to Craig, a young male officer was present during all of these incidents and that an older male officer was present for one of them. Craig states that the young male officer grabbed her by the arm and pulled her off the floor to show her the restraining chair. Craig contends that Officer Smith threatened to place her in the chair, but that she was never actually placed in the restraining chair. Craig contends that Officer Smith kicked and hit her over the course of several visits.

Craig was released from jail on March 26, 1997. She sought medical treatment at the Shelby County Hospital's emergency room for injuries allegedly sustained during her jail stay. Craig was seen by a Dr. Hambaugh who took x-rays and pictures of Craig's injuries. Craig reports that she had bruises over her entire body and two black eyes. Craig also reports that Dr. Hambaugh indicated that she had multiple contusions and bruises, and a back sprain.

As a result of the events that occurred during Craig's jail stay on March 24, 1997, Craig filed a complaint averring violations of state and federal law. An order entered by this court on August 18, 1998 dismissed all claims asserted against the Shelby County Commissioners in their individual and official capacities, as well as claims asserted against Officer Smith and Sheriff Jones in their official capacities. The only federal claims remaining in this case are Craig's § 1983 claim against Sheriff Jones for an alleged failure to train the employees of the Shelby County Jail, which Craig contends deprived her of rights guaranteed by the Fourth and Fourteenth Amendments, and Craig's § 1983 claim against Officer Smith for use of excessive force on a pre-trial detainee in

violation of the Fourth and Fourteenth Amendments. Craig also asserts an assault and battery claim against Officer Smith.

**Defendants' Motion to Strike**

For the reasons stated in the motion itself, this court finds that defendants' motion to strike the statement of Deborah Phillips is well taken and is due to be granted.

**Defendants' Motion for Summary Judgment**

*Immunity to Federal Claims*

Both defendants contend that they are shielded from liability on the federal claims by their qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil trials and from liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1149 (11th Cir. 1994). Qualified immunity is the rule rather than the exception, and only those acts that are "so obviously wrong, in light of the pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing" fall outside the protections afforded by the qualified immunity doctrine. *Id*.

Determining the existence of qualified immunity usually involves a two-part inquiry as to (1) whether the defendant was indeed performing a discretionary function, and (2) whether the law allegedly violated was "clearly established" at the relevant time. *Id*. In this case, however, the parties agree that Officer Smith was performing discretionary functions while processing Craig into the Shelby County Jail, and that

6

Sheriff Jones was performing a discretionary function in providing training to employees of the Shelby County Jail. The only remaining question, therefore, is whether the law was clearly established at the time of the alleged constitutional violations.

1. Sheriff Jones

Craig alleges that Sheriff Jones failed to adequately train, supervise, control, and discipline employees of the Shelby County Jail to restrain themselves from "unlawful tortious, malicious, abusive, wanton, negligent and deliberately indifferent acts and/ or omissions," and that this failure deprived her of constitutional rights guaranteed by the Fourth and Fourteenth Amendments. *Complaint*, at ¶ 28. A supervisor can be held liable under § 1983 when a reasonable person in the supervisor's position would have known that his or her conduct infringed the constitutional rights of the plaintiff and his or her conduct was causally related to the constitutional violation committed by his or her subordinate. *McKinney*, 997 F.2d at 1443 (citing *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990)). For several reasons, Sheriff Jones is entitled to qualified immunity on Craig's § 1983 action against him.

First, the court notes that Craig has presented no evidence indicating that Sheriff Jones did, in fact, fail to train, supervise, or discipline the employees of the Shelby County Jail. In contrast, Sheriff Jones has provided an affidavit wherein he states that his officers have been trained regarding the Shelby County Jail Policy and Procedure Directive on Non-Deadly Force (*Affid. of Sheriff Jones*, at ¶¶ 4-7). The

7

said policy itself is made part of the record. Second, even if Craig's evidentiary shortcomings are overlooked, it cannot be said that a reasonable officer would have known that failing to provide further training, supervision, or discipline infringed on Craig's constitutional rights. *See Gold v. City of Miami*, 121 F.3d 1442, 1447 (11th Cir. 1997), *reh'g denied*, 138 F.3d 886 (11th Cir. 1998); *cert. denied*, 119 S.Ct. 165; *McKinney v. DeKalb County*, 997 F.2d 1440, 1443 (11th Cir. 1993); *Sweatt v. Bailey*, 876 F. Supp. 1571, 1583 (M.D. Ala. 1995). Third, even ignoring Craig's evidentiary shortcomings and assuming that Sheriff' Jones should have known that his conduct infringed on Craig's rights, nothing establishes the causal relationship required to impose liability on Sheriff Jones. *See Sweatt*, 876 F. Supp. at 1583. Sheriff Jones is therefore entitled to qualified immunity on Craig's § 1983 claim.

2. Officer Smith

When considering the issue of qualified immunity on a motion for summary judgment, this court must view the facts in a light most favorable to Craig, the non-moving party, and determine whether the defendants are entitled to qualified immunity under that version of the facts. *See Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir. 1998). Those facts, as presented by Craig, indicate that Craig was upset and crying throughout her arrest and subsequent detention, but that she did not resist the officers in any way or at any time. Craig was placed in handcuffs, leg shackles, "short-chained," and otherwise restrained. Craig was slapped, hit, and kicked multiple times resulting in two black eyes, bruises all over her body, and a back sprain. Interestingly,

Officer Smith, Officer Ballenger, and Officer Dove never deny that Craig was in fact slapped, hit, or kicked; Officer Ballenger and Officer Dove merely state their opinions that "only the amount of force necessary to restrain [Craig] was used" (*Statement of Officer Ballenger*, at ¶¶ 5,7) and "no excessive force was used" (*Statement of Officer Dove*, at ¶ 3).

If these blows were indeed delivered to a pre-trial detainee under the circumstances described by Craig, such action would violate clearly established law, and Officer Smith is therefore not entitled to qualified immunity. *See*, *e.g.*, *United States v. Myers*, 972 F.2d 1566 (11th Cir. 1992), *cert. denied*, 507 U.S. 1017, 113 S.Ct 1813 (1993) (no qualified immunity for use of excessive force where officer used stun gun on two arrestees in holding cell prior to booking procedure, though the arrestees did offer minimal resistance); *Albritten v. Dougherty County*, 973 F. Supp. 1455 (M.D. Ga. 1997) (no qualified immunity for use of excessive force where officers allegedly choked, dragged, hit, kicked, and kneed arrestee in "drunk tank"prior to booking procedure); *Sweatt*, 876 F. Supp.at 1571 (no qualified immunity for use of excessive force where officer beat non-resisting arrestee during booking procedure). *But see Gold*, 121 F.3d at 1442 (qualified immunity protects officers from excessive force claim where officers allegedly handcuffed arrestee too tightly and did not loosen cuffs for twenty minutes). Since at least 1990, the law in the Eleventh Circuit has been clear that a police officer's use of excessive force violates a pre-trial detainee's constitutional rights under either the Fourth or Fourteenth Amendments,[7]

---

[7] Though neither the Supreme Court nor the Eleventh Circuit has decided whether claims of excessive force against a post-arrest, pre-charge detainee

and could even subject the officer to criminal liability under 18 U.S.C.A. § 242. *McKinney,* 997 F.2d at 1443; *Albritten,* 973 F. Supp. at 1463; *Sweatt,* 876 F. Supp. at 1580; *see Myers,* 972 F.2d at 1569. Officer Smith is therefore not entitled to qualified immunity on Craig's § 1983 action.

### *Immunity to State Claim*

Officer Smith asserts absolute immunity as an affirmative defense to Craig's state law claim of assault and battery. While certain state constitutional officers, such as sheriffs and deputy sheriffs, are entitled to absolute sovereign immunity except for injunctive relief, county and municipal police officers are entitled to only "discretionary" immunity. *See Tinney v. Shores,* 77 F.3d 378, 383 (11th Cir. 1996) (sheriffs and deputy sheriffs have absolute immunity); *Sheth,* 145 F.3d at 1236-38 (declining to extend absolute immunity to non-constitutional officers, holding discretionary immunity applies); *see also* ALA CODE § 6-5-338(a); *Hardy v. Town of Hayneville,* ___ F. Supp.2d ___, 1999 WL 183763, * 12-14 (M.D. Ala.). Officer Smith is therefore not protected by absolute immunity.

Genuine issues of material fact also prevent this court from determining whether Officer Smith is entitled to discretionary function immunity. Despite the fact that Craig concedes, for the purposes of the qualified immunity determination, that Officer Smith was engaging in a

---

should be evaluated under the Fourth or Fourteenth Amendment, at the time of Officer Smith's alleged beating of Craig, the law was clearly established that the use of excessive force violates either the Fourth or Fourteenth Amendment. *Albritten,* 973 F. Supp. at 1463-64; *Sweatt,* 876 F. Supp. at 1580-81. A discussion of the applicable standard is contained elsewhere in this opinion.

discretionary function at the time of the alleged constitutional violation, this concession does not automatically mean that Officer Smith was engaged in a discretionary function for the purposes of immunity to state law claims. Indeed, Alabama law excludes from the definition of "discretionary" all acts which are done in bad faith, with malice or willfulness. *Sheth*, 145 F.3d at 1239. Because the parties dispute whether Craig was resisting the officers and posed a danger to herself, as well as the amount of force Officer Smith used to restrain Craig, the court cannot determine at this point whether Officer Smith acted in bad faith, with malice, or willfulness. Clearly, if Officer Smith slapped, kicked, and hit an arrestee who was handcuffed with her hand restraints "short chained" to her leg shackles, these acts would fall outside the scope of discretionary and Officer Smith would not be entitled to immunity. *See id.* at 1234, 1239 (officer not entitled to discretionary immunity where officer shoved arrestee several times, kneed her in stomach, and handcuffed her after arrestee challenged officer's knowledge of law).

### *Claims Against Officer Smith*

Having concluded that Officer Smith is entitled to neither qualified immunity nor discretionary function, the court must next assess whether Craig has shown the existence of a material fact regarding her claims of excessive force and assault and battery.

In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *Graham v.*

11

*Connor*, 490 U.S. 386, 394; 109 S.Ct 1865, 1870 (1989); *see Vineyard v. County of Murray*, 990 F.2d 1207, 1211 (11th Cir. 1993). The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right. *Graham*, 490 U.S. at 394, 109 S.Ct. at 1871. Craig asserts that Officer Smith's use of excessive force infringed both her Fourth and Fourteenth Amendment rights.

It is clear that the Due Process Clause of the Fourteenth Amendment protects a pretrial detainee such as Craig from the use of excessive force that amounts to punishment. *See Graham*, 490 U.S. at 395 n.10; 109 S.Ct at 1871; *Vineyard*, 990 F.2d at 1211; *Wright v. Whiddon*, 951 F.2d 297, 300 (11th Cir. 1992). The Fourteenth Amendment essentially prohibits treatment that is intended to "punish" a pre-trial detainee who has not yet been convicted of any crime.[8]  *See Bell v. Wolfish*, 441 U.S. 520, 535-39, 99 S.Ct 1861 (1978). It is also clear that claims of excessive force during the course of a search, arrest, or other seizure must be analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham*, 490 U.S. at 395, 109 S.Ct. at 1871; *see Sheth*, 145 F.3d at 1238. What both the Supreme Court and the Eleventh Circuit have left unresolved, however, is "whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins" or whether these claims should be evaluated

---

[8] Defendants assert that the Eleventh Circuit articulated the appropriate formulation of the due process standard in *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). While that case did involve a detainee's claim of excessive force, the Eleventh Circuit expounded on the due process standard in the context of the detainee's claim of mistreatment while in custody, not excessive force.

under the Fourteenth Amendment. *Graham*, 490 U.S. at 395 n.10, 109 S.Ct. at 1871 n. 10; see *Myers*, 972 F.2d at 1572. Following the lead of its sister court from the Middle District of Alabama, this court will not decide at this time whether Craig's excessive force claim shall be evaluated under the Fourth or Fourteenth Amendment. See *Sweatt*, 876 F. Supp. at 1582.

Craig's behavior in the detox cell and the amount of force used to restrain her are hotly disputed issues of fact material to both her excessive force and assault and battery claims. Summary judgment is therefore clearly inappropriate.

## Conclusion

Defendants' motion to strike the statement of Deborah Phillips is due to be granted.

Sheriff Jones is entitled to qualified immunity on Craig's § 1983 claim for failure to train. Craig presented no evidence that Sheriff Jones did, in fact, fail to train, supervise, or discipline the employees of the Shelby County Jail. Craig has not shown that a reasonable officer should have known that any failure to train would infringe Craig's constitutional rights. To the extent that defendants' motion seeks summary judgment on Craig's § 1983 claim against Sheriff Jones, the motion is therefore due to be granted.

Viewing all factual disputes in favor of Craig, Officer Smith is entitled to neither qualified immunity nor to discretionary function immunity. If Officer Smith did indeed slap, hit, and kick Craig as

13

alleged, such conduct violates constitutional rights that were clearly established long before March 24, 1997. Such conduct would also not be considered a "discretionary function" under Alabama law because it was done in bad faith, maliciously and willfully. The existence of genuine issues of material fact make summary judgment inappropriate on both of the claims asserted against Officer Smith. To the extent that defendants' motion seeks summary judgment on Craig's claims against Officer Smith, the motion is therefore due to be denied. An appropriate order will be separately entered.

DONE this 17th day of May, 1999.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE